CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 15 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JERMAINE LORENZO PICKETT, | )<br>) |
| Petitioner, | ) Case No. 7:08CV00505 |
| v. | )<br>) **MEMORANDUM OPINION** |
| GENE JOHNSON, DIRECTOR, | ) By: Glen E. Conrad<br>) United States District Judge |
| Respondent. | ) |

Petitioner Jermaine Lorenzo Pickett, a Virginia inmate proceeding pro se, brings this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. In his petition, Pickett challenges the validity of his confinement pursuant to the August 2006 judgment of the Circuit Court for the City of Danville, Virginia, convicting him of capital murder and related offenses and sentencing him to life in prison. Respondent has filed a motion to dismiss, and Pickett has responded, making the matter ripe for decision. Upon review of the record, the court finds that the motion to dismiss must be granted because the petition was not timely filed, pursuant to 28 U.S.C. § 2244(d)(1) and that the petitioner's new evidence does not support a claim for relief.

## Background

Judgment was entered against Pickett, pursuant to his guilty plea, on August 28, 2006. He stands convicted of capital murder, use of a firearm in the commission of a felony, wearing body armor while committing a crime of violence, and possessing a firearm after being convicted of a felony. Pursuant to the terms of the plea agreement between Pickett and the

Commonwealth, the trial court sentenced Pickett to life imprisonment without parole for the capital murder conviction and a total of 18 years' imprisonment for the other three convictions. Pickett did not appeal his convictions or sentences.

In support of the guilty plea, the prosecutor offered the following summary of the evidence that would have been presented against Pickett at trial. (Plea Tr. 14-19, Aug. 23, 2006.) On August 18, 2005, Pickett traveled from Richmond, Virginia to Danville for a pre-arranged meeting with two individuals on North Main Street. Pickett had already spoken with one of these individuals by telephone to arrange the meeting. These two individuals were charged as co-defendants in this case, and at the time of Pickett's guilty plea, had agreed to testify against him.[1] In telephone conversation, the co-defendant had agreed to point out a certain person whom Pickett had been hired to murder in exchange for drugs or money or both; Pickett did not personally know the target individual.

In the late evening hours of August 18, 2005, Pickett drove to the meeting location and picked up the co-defendants, and then the three of them drove to the area where they had been told they could locate the target. In the car, Pickett gave each of the co-defendants a firearm, so that they could assist in the murder, although the original arrangement had been for the co-defendants to receive drugs in exchange only for identifying the target to Pickett. They soon found the target, riding on a motorized scooter. Pickett turned the car onto the wrong side of the road so that it struck the scooter and knocked the target off. Pickett and his co-defendants got out of the car and began shooting at the target individual, who returned fire and ran away. As the target individual ran past a young boy named Arlo Walker, a bullet intended for the target

---

[1] Although other evidence in the state court record indicates that these co-defendants were Alphonso Graves and Anthony Glass, the prosecutor did not use the individuals' names during the plea hearing.

2

individual hit Walker in the mouth and killed him. The target got away, and Pickett and the co-defendants jumped back into their car, with Pickett driving. Two police officers investigating an unrelated matter near the scene heard the shots, jumped into their police cruiser, and soon pulled in behind Pickett's vehicle. After leading the police car on a short pursuit, Pickett and the co-defendants bailed out of their car, with the vehicle still running, and ran away. The car hit a telephone pole. A police officer apprehended Pickett almost immediately, but the two co-defendants eluded capture. A description of them was broadcast on police radio, and they were apprehended within the hour.

On the floorboard on the driver's side of Pickett's vehicle, police found a ten millimeter Glock semi-automatic pistol and a cell phone. Later, two nine millimeter semi-automatic pistols were located in some tall weeds near the place where the co-defendants had exited from the right side of the moving car. The three firearms were tested and found to be in operating order. The bullet taken from the body of Arlo Walker and another bullet removed from the wall of a house behind him were identified as having similar characteristics to bullets fired by the Glock. Two other cartridges recovered at the crime scene were also identified as having come from the Glock. Tests also indicated that Pickett had gun residue on his hand. The particulars concerning the murder for hire arrangement in the case were still under investigation at the time of Pickett's guilty plea.

Pickett filed a petition for a writ of habeas corpus in the Circuit Court for the City of Danville on August 20, 2007 at the earliest.[2] He alleged three grounds for relief:

---

[2] Pickett signed and dated his state habeas petition on August 1, 2007, and had it notarized on that date. He signed and dated his memorandum in support of the habeas petition on August 20, 2007. The circuit court stamped the petitioner's materials "received" on August 27, 2007.

3

a.  His defense team was ineffective for failing to fully investigate and discover exculpatory evidence, and for misrepresenting the evidence against petitioner, thereby rendering petitioner's guilty plea unintelligent and involuntary.

b.  The evidence establishes "unequivocally" that petitioner is actually innocent.

c.  The trial court erred during the plea colloquy in failing to ask questions that would have revealed that the guilty plea was not intelligent or voluntary.

On December 6, 2007, the state habeas court entered an order dismissing Pickett's habeas petition. The court dismissed claim (a) pursuant to the rule stated in Anderson v. Warden, 281 S.E.2d 885, 888 (Va. 1981), because the claim was refuted by Pickett's sworn testimony, and because Pickett failed to satisfy the two-prong test in Strickland v. Washington, 466 U.S. 668 (1984). The court dismissed claim (b) on the ground that a claim of actual innocence is beyond the scope of habeas review. See Lovitt v. Warden, 586 S.E.2d 801, 827 (Va. 2003). The court held that claim (c) was procedurally defaulted under Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), since it could have been raised at trial or on direct appeal. Pickett appealed the circuit court's dismissal order. The Supreme Court of Virginia dismissed Pickett's appeal on July 8, 2008 upon finding no reversible error. (Record No. 080554.)

Picket filed his federal habeas petition on September 4, 2008, alleging the following claims:

a.  Ineffective assistance of counsel;

b.  Guilty plea was involuntary, and petitioner was coerced into pleading guilty;

c.  The trial court erred during the plea colloquy by failing to establish that the plea of guilty was voluntary; and

d.  Prosecutorial misconduct.

4

In March 2009, Pickett submitted newly discovered evidence and alleged three additional grounds for habeas relief:

1. The newly discovered evidence shows that the Commonwealth used perjured testimony that coerced petitioner into pleading guilty;

2. The false testimony supplied the only element of the offense to which petitioner pleaded guilty; and

3. The new evidence shows that the statements made during the grand jury proceedings were false, and that without these statements, petitioner would not have been indicted for capital murder or pleaded guilty.

## Discussion

Habeas petitions filed under § 2254 are subject to a one-year period of limitation. 28 U.S.C. § 2244(d)(1). Generally, this period begins to run from the date on which the judgment of conviction becomes final. See 28 U.S.C. § 2244(d)(1)(A).[3] A conviction becomes final once

---

[3] Under 28 U.S.C. § 2244(d)(1)(A)-(D), the one-year period of limitation for filing a habeas petition under § 2254 begins to run on the latest of four dates:
  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
  Here, Pickett does not allege any facts on which his limitation period as to his initial petition could be calculated under subsections (B), (C), or (D). Therefore, the court will consider the timeliness of the petition only under subsection (A).

5

the availability of direct review is exhausted. See United States v. Clay, 537 U.S. 522, 524 (2003). However, pursuant to 28 U.S.C. § 2244(d)(2), the one-year filing period is tolled while an inmate's "properly filed application for State post-conviction or other collateral review" is "pending."

### A. Untimely Initial Petition

The circuit court entered judgment against Pickett on August 28, 2006, and he then had thirty (30) days in which to file a notice of appeal to the Court of Appeals of Virginia. See Rule 5A:6(a), Rules of the Supreme Court of Virginia. He did not appeal. Therefore, his conviction became final for purposes of § 2244(d)(1) on September 27, 2006, when his opportunity to pursue a direct appeal expired. On that same day, the one-year period under § 2244(d)(1)(A) to file a § 2254 petition began to run for Pickett.

Pickett filed his timely state habeas petition in the Circuit Court for the City of Danville on August 27, 2007, after 334 days of the one-year federal filing period had elapsed. The filing of this state petition stopped the federal clock, pursuant to § 2244(d)(2). The filing period remained tolled throughout the pendency of the petition in the circuit court and the subsequent appeal. Once the Supreme Court of Virginia dismissed Pickett's appeal on July 8, 2008, the federal time clock began running again. Given the portion of the federal limitation period time that had expired before he filed the state petition, Pickett had 31 days after the Supreme Court's order—until August 9, 2008—to file a timely § 2254 petition raising his federal habeas claims.

Pickett signed and dated his federal habeas petition on August 22, 2008, and the court stamped it received on September 4, 2008.[4] For purposes of calculating the statute of

---

[4] Pickett submitted his § 2254 petition to the United States District Court for the Eastern District of Virginia, and that court transferred the case here, since the court that imposed his convictions is located within the territorial jurisdiction of this court.

6

limitations, a habeas petition is deemed filed when the prisoner delivers his petition to prison officials for mailing. See Rule 3(d), Rules Governing Section 2254 Cases; Houston v. Lack, 487 U.S. 266 (1988). Accordingly, the court will assume for purposes of this opinion that Pickett's habeas petition was delivered to prison officials for mailing and is thus deemed to have been "filed" on August 22, 2008, the day that he signed and dated his pleading. As this filing date falls outside the one-year period under § 2244(d)(1)(A), the petition is untimely.

Pickett argues that because he filed his state habeas petition within the two-year filing period allowed under state law, Va. Code Ann. § 8.01-243(a), his federal petition is also timely filed. Essentially, his argument rests on an assumption that his conviction did not become final for purposes of § 2244(d)(1) until he had exhausted his opportunity to pursue state habeas relief. This assumption is contrary to federal law. See Harris v. Hutchinson, 209 F.3d 325, 331 (4th Cir. 2000) (finding that language of § 2244(d) "provides unambiguously that the one-year period within which a federal habeas petition must be filed commences on the 'conclusion of direct review'" and cannot be reasonably construed to suggest that filing period "commence[s] on the 'conclusion of State post-conviction proceedings.'"); Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (finding that timely filed state court habeas proceeding does not reset federal limitation period to begin when state habeas proceeding concludes). Pickett's conviction became final for purposes of the federal limitation period when his opportunity for direct appeal expired thirty (30) days after entry of the judgment. § 2244(d)(1)(A). As discussed, even
7

allowing for tolling of the federal period during the state habeas proceedings, Pickett filed his federal petition after that one-year period expired on August 9, 2008. Pickett offers no ground on which he is entitled to equitable tolling as to the claims in his initial habeas petition.[5]

## B. Newly Discovered Evidence

Pickett argues that he is actually innocent of capital murder and offers new evidence in support of this argument. Specifically, he submits the affidavit of another state inmate, Antwoine Jones, who was purportedly housed at the Danville City Jail ("the jail") in May 2006 in the same cell block as Alphonso Graves, the chief prosecution witness against Pickett. According to Jones' affidavit, he and Graves talked about why Graves was in jail:

> [Graves] explained to [Jones] that the Commonwealth had no evidence against him. . . . [Jones] asked him why would they stop you and pick you up? He stated that he matched the description of a guy in the car. So [Jones] asked like what? [Graves] stated "my clothes." So we moved on to discuss the guy in "K" block of the Danville City Jail.
>     I asked [Graves] did he know what the dude was facing [and Graves said,] "death penalty." I asked how did they charge him with that. He said that "they said he was paid." So I asked "was he paid by anyone." [Graves] said "I don't know, I don't know him and I know nothing about any money, I don't know." So [Jones] asked him did the man get paid[?] [Jones] said "No, How would I know, I don't know him."

(Pet. Resp. Ex. 15, Mar. 16, 2009.) Pickett claims that he is the man who Graves and Jones are discussing in this conversation excerpt – "the guy in 'K' block" of the Danville City Jail in May 2006. Pickett claims that he was in segregation at that time, however, and had no contact with Jones or Graves at the jail. He further states that he and Jones were housed at different prisons

---

[5] Equitable tolling is available only in "those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quotation marks omitted) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). Thus, to be entitled to equitable tolling, an otherwise time-barred petitioner must present "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Id. Petitioner must demonstrate that he exercised "reasonable diligence in investigating and bringing [the] claims." Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 617 (3d Cir. 1998).

8

Case 7:08-cv-00505-GEC-mfu   Document 21   Filed 07/15/09   Page 8 of 13   Pageid#: 211

until January 2009 and that in February 2009, he first obtained the information from Jones about Graves' comments on his case. Respondent filed a supplemental motion to dismiss, arguing that Pickett's new claims are untimely filed, procedurally defaulted, and without merit.

For purposes of this opinion, the court will consider the new claims timely filed under § 2244(d)(1)(D). Pickett alleges facts indicating that he could not reasonably have discovered Jones' information regarding Graves until he and Jones were housed in the same prison in the same cell block area, which occurred well after state trial and habeas proceedings and at least several months after Pickett filed his initial § 2254 petition.

Pickett admits that he did not present any claims involving the newly discovered evidence to the Supreme Court of Virginia before filing this § 2254 petition. As such, his claims 1, 2, and 3 are not exhausted, as required pursuant to § 2254(b). See Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (to satisfy exhaustion requirement, petitioner must present "both the operative facts and the controlling legal principles" of his habeas claim to the state's highest court). If Pickett presented the Jones affidavit and related claims to the state courts now, however, the claims would be dismissed as procedurally barred under the state statute of limitations for habeas petitions. See Va. Code Ann. § 8.01-654(A)(2) (providing that state habeas petition must be filed within two years from trial court's final judgment or within one year from final disposition of direct appeal or expiration of opportunity to appeal, whichever is later). Because the claims are thus both unexhausted and defaulted, this court need not dismiss the habeas action to allow for exhaustion, but the court is nevertheless barred from review of the claims on the merits, absent a showing of cause and prejudice or actual innocence. Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990).

To show cause, petitioner must demonstrate that some force outside himself prevented

9

him from learning the facts necessary to bring the claims earlier, although he exercised reasonable diligence to discover such facts. Hedrick v. True, 443 F.3d 342, 366 (2006); Murray v. Carrier, 477 U.S. 478, 487-88 (1986). Given Pickett's allegation that he could not have discovered Jones' information earlier than he did, the court will assume without finding that he can show cause for his failure to present any claims related to Jones' affidavit in some earlier state proceeding or in his initial § 2254 petition.

In addition to showing cause, however, Pickett must also demonstrate prejudice resulting from the alleged constitutional error, and that he has not done. To demonstrate "prejudice" in the procedural default context, petitioner

> must convince [the court] that there is a reasonable probability that the result of the trial would have been different if the [undiscovered] documents had been disclosed to the defense. . . . [T]he adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the suppressed evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.
> . . . .
> [T]he question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

Strickler v. Greene, 527 U.S. 263, 289-90 (1999) (internal quotations and citations omitted) (stating prejudice standard for claim that prosecution withheld favorable evidence).[6]

In this case, the state had strong forensic evidence and testimony placing Pickett as the shooter whose stray bullet killed Walker, as well as testimonial evidence indicating that he committed this act in exchange for a promise of compensation from some unknown party. Pickett apparently argues, albeit vaguely, that Graves' revelations about the murder for hire as

---

[6] While the court believes that Strickler sets forth the appropriate prejudice standard to be applied here, Pickett's case is clearly distinguishable from the facts of the Strickler case itself. Strickler involved a claim that prosecutors failed to disclose favorable evidence to the defense, while in Pickett's case, there is no evidence that anyone associated with the prosecution or the defense knew at the time of trial about the alternative version of events which Graves related to Jones.

10

related in Jones' affidavit contradict the statement Graves gave to police and the testimony that he gave before the grand jury. If the affidavit is admissible at all, however, it is, at best, impeachment material against Graves, as an indication that he told a different story to a fellow inmate at the jail than he told to the police interviewer or the grand jury. Nothing in the record offers support for a finding that Graves' grand jury testimony was perjured and the comments he allegedly made to Jones told the real truth of the matter. Indeed, the affidavit is not inconsistent with the government's evidence. Pickett told police that he did not know the real names of either of the men who had been in the car with him. Anthony Glass told police about a 3:00 a.m. telephone call from Graves in which Graves told him that a man known as "Freak" was coming from Richmond to Danville to shoot a man named Marcus, that Graves was going to help Freak find Marcus, and that Graves wanted Glass to be involved. Clearly, men can plan to work together to commit a murder without having intimate knowledge of each other.

In short, Pickett cannot show that adding Jones' affidavit to the accumulated evidence in this case swings the balance sufficiently toward possible acquittal on any of the counts against him so as to "undermine confidence" in the outcome and show actual prejudice under Strickler. 527 U.S. at 290. Given the strength of the government's evidence, there is no reasonable probability that a reasonable defendant – faced with the choice of trial with its risk of a death sentence if convicted or a plea agreement offering a life sentence – would have rejected the plea agreement based on the minimal benefit that Jones' testimony would have added to the defense at trial.

Similarly, the affidavit does not support a finding of actual innocence so as to allow consideration of the defaulted affidavit claims. To state a claim of actual innocence sufficient to excuse procedural default, a petitioner must show "it is more likely than not that no reasonable

11

juror would have convicted him" of the underlying crime if jurors had received specific, reliable evidence not presented at trial. Bousley v. United States, 523 U.S. 614, 623 (1998), citing Schlup v. Delo, 513 U.S. 298, 327 (1995). For the reasons already stated, Pickett cannot demonstrate that it is more likely than not that no reasonable juror would have convicted him of murder for hire if they had received the information in Jones' affidavit along with the other evidence the Commonwealth had accumulated against him. As Pickett thus fails to meet either of the exceptions to the procedural default of his claims regarding the late-discovered affidavit, the court must dismiss those claims as barred.

In any event, Pickett also fails to offer evidence in support of his claims on the merits. As stated, nothing in the affidavit or elsewhere suggests that the prosecutor knew Graves' testimony to the grand jury or his statements to police interviews were false. Therefore, Pickett fails to offer facts on which he could prove his claims that the prosecution knowingly used perjured testimony to obtain a capital murder indictment or to coerce Pickett into pleading guilty to the capital murder charge.

## Conclusion

For the stated reasons, the court concludes that the motion to dismiss must be granted. The record establishes that Pickett's initial petition was untimely filed, pursuant to § 2244(d)(1)(A), and his claims based on newly discovered evidence are procedurally defaulted and without merit. An appropriate order will enter this day.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial

Case 7:08-cv-00505-GEC-mfu Document 21 Filed 07/15/09 Page 12 of 13 Pageid#: 215

showing of the denial of a constitutional right. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, this court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal and seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and counsel of record for the respondent.

ENTER: This 15th day of July, 2009.

_____
United States District Judge